UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DEREK BOYD,                          )
                                     )
                  Petitioner,        )
                                     )
        v.                           )        No. 1:20-cv-02567-SEB-MJD
                                     )
WARDEN,                              )
                                     )
                  Respondent.        )

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Derek Boyd's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case number STP 20-06-0066. For the reasons explained in this Order, Mr. Boyd's petition is **denied**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Disciplinary Proceeding**

On June 22, 2020, Indiana Department of Correction (IDOC) Investigator R. Patton wrote

a conduct report charging Mr. Boyd with a violation of IDOC Adult Disciplinary Code B-220, engaging in an unauthorized financial transaction:

> On 6/22/2020 at approximately 2:50 p.m., I Lead Investigator R. Patton conducted an interview with Derek Boyd IDOC# 273507. During the interview, I questioned Boyd about writing grievances for other offenders in exchange for payment of any form, including commissary. Boyd admitted he wrote grievances for 3 other offenders, and that he received commissary from those same offenders. He claimed it was not payment for his assistance with the grievances. Based on my experience, offenders commonly trade or make payment using commissary items as a currency. Regardless of the reason behind the exchange of commissary, this is a violation of the adult disciplinary code, as it is the exchange of an item commonly used as a currency at HTCF, which I have observed many times before throughout my career.

Dkt. 19-1.

Mr. Boyd was notified of the charge on June 30, 2020, and he pled not guilty. Dkt. 19-3. He did not call any witnesses and did not request any physical evidence. *Id.*

A disciplinary hearing was held on July 7, 2020, and Mr. Boyd made a statement that the reporting officer "misinterpreted" what he said and what the officer "claimed is untrue." Dkt. 19-4. The disciplinary hearing officer (DHO) Sgt. Deposki considered the evidence and reasoned that "[t]he staff report is clear that the offender was involved in an unauthorized financial transaction." *Id.* Mr. Boyd's sanctions included a deprivation of 90 days' earned credit time and a credit class demotion. *Id.* The DHO further authored an incident report that detailed Mr. Boyd's conduct during the disciplinary hearing:

> On 7/7/2020 at approx. 09:00am I Sgt. Deposki was conducting a disciplinary hearing on Offender Boyd, Derek Doc#273507. Offender Boyd was acting aggressively towards myself stating that 'it's bullshit that I found him guilty on the write up because I didn't do it and Patton is targeting me.' I advised him to calm down and that if he continues his behavior he will be dismissed from the remainder of the hearing. He then remained quiet up until I stated his sanctions. He continued his behavior at which point he was dismissed.

Dkt. 19-2 (cleaned up).

Mr. Boyd's administrative appeals to the Facility Head and the Final Reviewing Authority were unsuccessful. Dkt. 19-5; dkt. 19-6. Mr. Boyd then filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which is now fully briefed and ripe for the Court's ruling.[1]

### C. Analysis

Mr. Boyd outlines 6 grounds in his petition: (1) that there is insufficient evidence; (2) that he did not receive an adequate written statement from the DHO; (3) that other inmates involved in unauthorized financial transactions were not disciplined or investigated; (4) that the DHO relied on withheld evidence to impose sanctions; (5) that he was not provided with documentary evidence; and (6) that this disciplinary case was a result of retaliation against him. Dkt. 1 at 2-6.

As a preliminary matter, Mr. Boyd alleges various violations of IDOC policy. But any argument related to violations of IDOC policies fails. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy do not form a basis for habeas relief. *See, e.g.*, *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

The Court will now address each of Mr. Boyd's grounds in the order in which they were raised in his petition.

---

[1] Mr. Boyd submitted recent filings speculating that the disciplinary sanctions challenged in this habeas petition must have been vacated due to a change in his projected release date. *See* dkt. 27 at 2. The Court noted that Mr. Boyd designated no evidence to show that his sanctions were vacated to render this action moot, and the Court directed the respondent to file a notice regarding the status of Mr. Boyd's sanctions. *Id.* at 2-3. The respondent did not respond to the Court's previous order, thus, the Court proceeds to rule on the merits of Mr. Boyd's petition in this Order.

**Ground One: Sufficiency of Evidence**

Mr. Boyd challenges the sufficiency of the evidence against him by arguing that Investigator Patton misunderstood what was said during the interview and that his conviction is based on an "unfounded made-up fairytale," as no video or written testimony of any unauthorized transaction exists. Dkt. 1 at 2. He states there "was no exchange for filing grievance[s] or any form of a payment." *Id.*

Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989). Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v, Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide [ ] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Nonetheless, in a safeguard against arbitrary revocation of an inmate's good-time credits, a court must "satisfy [itself] that the evidence the board did rely on presented 'sufficient indicia of reliability.'" *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

Code B-220, in relevant part, prohibits an offender from:

Engaging in or possessing materials used for unauthorized financial transactions . . . . . This includes the discussion of engaging in unauthorized financial transaction(s)

4

with any other person. **Giving, transferring, sending, trading, transmitting, or in any other manner moving monies or other currencies from an offender or their associate to another person or from another person to an offender or their associate or their associate without the prior authorization of a facility Warden.**

Dkt. 19-7 at 7 (emphasis in original).

The DHO reviewed Investigator Patton's conduct report which detailed an interview in which Mr. Boyd admitted to receiving commissary from three offenders. Dkt. 19-1. Based on Investigator Patton's experience, offenders often "trade or make payment using commissary items as a currency." *Id.* Mr. Boyd contends he was not paid in commissary for assisting inmates with filing grievances. But an exchange of commissary (a form of currency) from one offender to another offender without the prior authorization of the Warden violates Code B-220, regardless of the reason for the exchange. Dkt. 19-7 at 7. Mr. Boyd does not argue he had permission from the Warden to receive commissary from other offenders. Therefore, the conduct report alone provides "some evidence" to support the DHO's conclusion that Mr. Boyd engaged in an unauthorized financial transaction.

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* Mr. Boyd's argument that Investigator Patton misunderstood him or that the conduct report was somehow misconstrued or untrue is merely an invitation to reweigh the evidence, which the Court cannot do. Accordingly, Mr. Boyd is not entitled to habeas relief on this ground.

**Ground 2: Adequate Written Statement and Failure to Exhaust**

Mr. Boyd next argues that the DHO failed to provide an adequate written statement to support his finding of guilt. Dkt. 1 at 2. The respondent argues that Mr. Boyd failed to first present

this argument in his administrative appeals. Dkt. 19 at 6-8. In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for a writ of habeas corpus unless a showing of "cause and prejudice or a miscarriage of justice (meaning conviction of an innocent person)" has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat*, 288 F.3d at 981.

The respondent's argument is well taken, as the Court has reviewed Mr. Boyd's lower-level appeals and finds that they do not raise this ground as outlined in his habeas petition.[2] Dkt. 19-5; dkt. 19-6. Further, Mr. Boyd has not shown cause or prejudice. Therefore, the Court finds that Mr. Boyd has failed to exhaust ground 2, and thus, he is not entitled to habeas relief.

But, *even if* Mr. Boyd had exhausted this ground, he was not deprived of an adequate written statement by the DHO. "Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs*, 485 F.3d at 941 (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* The level of detail required in a hearing officer's written statement "will vary from case to case depending on the severity of the charges and the complexity of the factual circumstance and proof offered by both sides." *Arce v. Ind. Parole Bd.*, 596 F. App'x 501, 503 (7th Cir. 2015) (quoting *Culbert v. Young*, 834 F.2d 624,

---

[2] Mr. Boyd writes in his first-level appeal, for example,: "There is no evidence to support these outrageous, groundless allegations. This I.A. Official Ryan Patton misunderstood what was discussed, and is retaliating for PREA, the report I made on him on 6-19-20, and then a report was made to a #80 number thinking it was the I.D.O.C. Victim's Advocate, on 6-20-20, but it was a line to I.A., or directly to Ryan Patton. This is very clearly staff retaliation and is illegal . . . . Also, this official claims multiple inmates had took part in these financial transactions, yet I am the only one wrote up, or punished, as is very clearly established this is retaliation against me. This is not Internal Affairs job inside I.D.O.C. to harass inmates with false accusations." Dkt. 19-5. There is no raised issue about the adequacy of the DHO's written statement.

631 (7th Cir. 1987)). "[I]n a straightforward case . . . a very brief statement is sufficient." *Dullen v. McBride*, 27 F. App'x 607, 610 (7th Cir. 2001) (citing *Culbert*, 834 F.2d at 629-30). The DHO states simply that the conduct report was clear that Mr. Boyd engaged in an unauthorized financial transaction. The DHO cites the conduct report as the evidence relied upon, and the DHO's written statement articulates that the DHO found that evidence supportive of her conclusion. Dkt. 19-4. This is enough to meet the minimal standard due process requires. Therefore, on the merits, Mr. Boyd is not entitled to habeas relief on this ground.

**Ground 3: Violation of Equal Protection**

Mr. Boyd argues that "the other inmates alleged to have taken part in this illegal financial transaction were not [written] up or questioned." Dkt. 1 at 6.

To the extent Mr. Boyd raises an equal protection claim, such claim is cognizable in habeas corpus actions. *See Hanson v. Heckel*, 791 F.2d 93, 95 (7th Cir. 1986). "The Equal Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary discrimination." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 696 (7th Cir. 2015). To state an equal protection claim, Mr. Boyd must allege that (1) he is a member of a protected class, (2) that he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017).

"The Equal Protection Clause guards against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class of one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016). "Class-of-one discrimination is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." *Id.*

(citation and quotation marks omitted). The proper standard for evaluating such claims is unsettled, *see id.* at 706, but the petitioner here cannot meet any of the three proposed standards.

Any equal protection claim fails. As the respondent correctly points out, Mr. Boyd, a Caucasian inmate, does not identify himself as a member of a protected class and does not allege that the prison staff was motivated by some discriminatory purpose. Dkt. 19 at 11-12. "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Herro v. City of Milwaukee*, 44 F.3d. 550, 552 (7th Cir. 1995) (internal quotation omitted). Mr. Boyd does not allege that by being prosecuted for a disciplinary violation he was treated differently than other similarly situated prisoners of a different race, religion, or national origin, nor has he presented evidence that different offenses and sanctions for others were the result of intentional discrimination rather than other factors.

Any claim based on a class-of-one theory also fails. Mr. Boyd has not shown evidence of specific animus, and there is no basis for the Court to conclude that he was treated arbitrarily or irrationally.

Therefore, Mr. Boyd is not entitled to habeas relief on this ground.

**Grounds 4 and 5: Withholding or Denial of Evidence**

Mr. Boyd titles his grounds 4 and 5 as "withholding evidence relied on to impose sanctions" and "not providing documentary evidence." Dkt. 1 at 3-4. It appears that his arguments concern the DHO's incident report about aggressive conduct at the hearing. Dkt. 19-2. Mr. Boyd states the incident report was "untrue" and was made up to justify the DHO's administration of maximum sanctions, the DHO cannot add "incident reports to the file to try and justify" her violations of policy, and that, instead, he should have been issued a separate write up for any aggressive conduct

8

had it occurred. Dkt. 1 at 4-5. He then argues that because he did not receive a copy of this incident report, he was unable to defend or respond to it, and he was not able to raise it in his appeals. Dkt. 20 at 3.

All of these arguments concern the DHO's documentation of Mr. Boyd's conduct during the hearing, but they do not relate to any due process rights under *Wolff* or *Hill*. Failure to receive a copy of this incident report did not deprive Mr. Boyd of advanced written notice of the charges against him (engaging in an unauthorized financial transaction), did not deny him the opportunity to be heard by an impartial decisionmaker as the Court will address below, did not constitute a denial of presentation of evidence as Mr. Boyd did not request any evidence and the report was related to events that happened during the actual hearing, did not impact the adequacy of the DHO's written statement, and does not negate that "some evidence" supports his guilty finding.

Further, Mr. Boyd has presented no evidence that the DHO improperly imposed excessive sanctions rather than using progressive discipline, or that she used her incident report to maximize punishment. Excessive sanctions implicate the prison's compliance with IDOC policies, which do not provide support for habeas corpus relief. *See, e.g., Sandin*, 515 U.S. at 481-82 (prison policies do not confer rights on inmates); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process.") Moreover, the respondent argues, and the Court agrees, that the sanctions fell within the established parameters. *See* dkt. 19 at 16 (Boyd's deprivation of 90 days' good-time credit and a one-step class demotion falls within departmental policy for violating Code B-220); *see also* dkt. 19-8 at 40.

Accordingly, Mr. Boyd has not articulated any due process violations in any of these raised grounds, and thus, he is not entitled to habeas relief.

**Ground 6: Retaliation**

Mr. Boyd argues that his conduct report was "backdated" when prison staff discovered that he was filing two federal lawsuits against various individuals, including the DHO and Investigator Patton. Dkt. 1 at 5. Mr. Boyd contends that "it most certainly was retaliation" because Investigator Patton was aware of PREA complaints Mr. Boyd had made against him and had intercepted his federal lawsuits to conspire with the DHO. Dkt. 20.

"Prisoners have a right to be free from retaliation by prison officials, but . . . the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *McPherson*, 188 F.3d at 787; *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). As the Court discussed in the previous sections, Mr. Boyd has not demonstrated that due process violations occurred, nor does he sufficiently argue that any other protections afforded to him under *Wolff* were violated. So, "his retaliation claim also fails." *Id.*

Mr. Boyd's argument that Investigator Patton retaliated against him is merely conclusory and speculative. Dkt. 20 at 2 ("Ryan Patton retaliated telling them all he would handle it I'm sure because he's that guy at the workplace that just thinks he's such a significant important power player he would smooth it all over.").

To the extent Mr. Boyd argues that the DHO was not impartial while presiding over his hearing, *id.* at 3, because of retaliation, his argument also fails. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible

bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Boyd has not provided clear evidence to rebut the presumption that the DHO was impartial. He has not shown the DHO was directly or substantially involved in the factual events or investigation of his charge or that the DHO had a disqualifying relationship that would establish partiality. *See, e.g., Eads*, 280 F.3d at 729 (noting that a prisoner's due process right to an impartial decisionmaker might be violated if the officer on the review board was engaged in an intimate, romantic relationship with one of the witnesses crucial to the prosecution.).

Finally, even if Mr. Boyd had some prior history with the reporting Investigator or DHO, that does not by itself establish a constitutional violation. *See, e.g., Peters v. Anderson*, 27 F. App'x 690, 692 (7th Cir. 2001) ("Prisoners often sue multiple defendants with only tenuous connections to the factual bases of their complaints, and just being named in a lawsuit is not enough to disqualify a prison employee from serving on a CAB. [Petitioner] was required to show more, e.g., that [the DHO] had significant personal involvement in the events underlying his lawsuit."); *see also Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (due process does not require automatic disqualification of CAB members who are defendants in unrelated lawsuits filed by inmate facing a disciplinary hearing).

Accordingly, this ground also fails, and Mr. Boyd is not entitled to habeas relief.

### D. Conclusion

The touchstone of due process is protection of the individual against arbitrary action of the

government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Boyd to the relief he seeks. Accordingly, Mr. Boyd's petition for a writ of habeas corpus is **denied** and this action is **dismissed with prejudice**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: _____1/9/2023_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEREK BOYD
273507
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
PLAINFIELD, IN 46168
Electronic Service Participant – Court Only

Monika P. Talbot
INDIANA ATTORNEY GENERAL
monika.talbot@atg.in.gov